# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO 6:08-CR-177-ORL-35DAB** |
| v. | and |
| **HARRY WILLIAM MARRERO** | **CASE NO 8:94-CR-65-T-35DAB** |
| _____ / | |

## MR MARRERO'S SENTENCING MEMORANDUM

*It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.*

*Koon v. United States*, 518 U.S. 81, 113, 116 S.Ct. 2035, 2053 (1996).

**MR MARRERO'S CASE must be viewed** through the appropriate lens, measured by the context and circumstance of his participation, and the quality, quantity, and scope of his culpability. As Shakespeare warned so long ago in Henry IV, we must not shoot the messenger. Mr Marrero is but a small, bit contributor encompassed by a larger, grander scheme – a fraudulent conspiracy charged by his co-defendant, Angel Cruz. As of the filing of this memorandum, Mr Cruz remains at large and is a fugitive.

Mr Marrero stands before the Court braced for punishment, presently scheduled for sentencing on January 7, 2009 before the Honorable Mary S Scriven. He has accepted responsibility for his offense, made strong efforts toward atonement, and has shown his good faith and sincere efforts at penance by cooperating and providing substantial assistance to the government in its on-going investigation of Mr Cruz and The United Cities Group, Inc.[1] In short, Mr Marrero is asking of this Court for its understanding, compassion, and empathy when imposing its judgement – a

---

[1] *See, e.g., Bank of America v The United Cities Group, Inc.*, Case No 08-21917-CIV-Gold (S.D.Fla. July 8, 2008).

sentence sufficient but no greater than necessary to meet the stated statutory purposes of federal sentencing.

Chief Justice Rehnquist wrote in *Payne v. Tennessee*, 501 U.S. 808, 819-820, 111 S.Ct. 2597, 2605 (1991):

> The principles which have guided criminal sentencing - as opposed to criminal liability - have varied with the times. The book of Exodus prescribes the *Lex talionis,* "An eye for an eye, a tooth for a tooth." EXODUS 21:22-23. In England and on the continent of Europe, as recently as the 18th century, crimes which would be regarded as quite minor today were capital offenses. Writing in the 18th century, the Italian criminologist Cesare Beccaria advocated the idea that "the punishment should fit the crime." He said that "[w]e have seen that the true measure of crimes is the injury done to society." J. Farrer, CRIMES AND PUNISHMENTS 199 (1880).

Though Mr Marrero is exposed to jail time, and the Court may very well contemplate such measures, it might also be fair to say that Mr Marrero is a person ... maybe "a unique study in the human failings" that this Court so often must adjudge.  More than 70 years ago, Clarence Darrow wrote:

> Let us take the common idea of the criminal: the ignorant, the poor, the unfortunate, the dispossessed, the wretched who make up the great mass of victims of all the courts, the jails, the prisons, insane asylums, poorhouses, and death chambers all over the world.  What can we do with them? What can we do for them, to make living easier and safer for the rest of us who are good?  I am willing to admit that something should and must be done; something less critical and guarded, more human, more helpful, more permanent, more certain than the present worn-out, idiotic, unavailing and merciless measures we take to determine who shall languish in prison and who stay out.

Clarence Darrow, THE STORY OF MY LIFE 355 (Da Capo Press 1996).  Mr Marrero presents the question, then, as to whether we shall tolerate the notion that he languish in prison and behind bars or, whether, we might help him to further help himself.

*The sentencing standards*

The Eleventh Circuit noted in *United States v. Williams* that "[u]nder our constitutional system, the power to define penalties for federal crimes belongs to Congress, not the judiciary." *United States v. Williams*, 472 F.3d 835, 836 (11th Cir. 2006)(quoting *United States v. Evans*, 333 U.S. 483, 486, 68 S.Ct. 634, 636 (1948)). "The judiciary is not free, generally, to replace congressional policy with one it deems superior." *Williams*, 472 F.3d at 836 (citing *Neal v. United States*, 516 U.S. 284, 116 S.Ct. 763 (1996); *Chapman v. United States*, 500 U.S. 453, 111 S.Ct. 1919 (1991)).

The *Williams* court went on to observe:

> Congress created the Sentencing Commission under its power to define penalties for federal crimes, using a sentencing guidelines scheme to limit judicial discretion. Of course, Congress's authority in this area is not without limitation. In *United States v. Booker*, the Supreme Court held that mandatory sentencing enhancements triggered by judge-found facts violate a defendant's constitutional right to a trial by jury. To solve the constitutional problem, the Court excised the statutory provision that made the Sentencing Guidelines mandatory, thereby rendering them advisory.
>
> Rendering the Guidelines advisory, however, does not permit unfettered judicial discretion. District courts must still consult the Guidelines and take them into account when sentencing. Moreover, *Booker* cabined judicial discretion by grounding it in the 18 U.S.C. § 3553(a) factors. These factors serve to guide district courts in applying their newly found discretion in individual cases, and to promote greater uniformity in sentencing decisions.

*Williams*, 472 F.3d at 836-837 (citations, quotations, and footnotes omitted).

Post-*Booker*, then, sentencing now requires two steps. "First, the district court must correctly calculate the applicable sentencing range provided by the Sentencing Guidelines." *Williams*, 472 F.3d at 837 (citing *United States v. McVay*, 447 F.3d 1348, 1353 (11th Cir. 2006)). "Second, the district court must determine a reasonable sentence by considering the sentencing range provided by the Guidelines and the § 3553(a) factors." *Williams*, 472 F.3d at 837 (citing *United States v. Booker*,

543 U.S. 220, 264, 125 S.Ct. 738, 767 (2005); *United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005)).[2] Said another way, "'After the district court accurately calculated the [g]uideline range, it may impose a more severe or more lenient sentence that we review for reasonableness." *United States v. Owens*, 464 F.3d 1252, 1254 (11th Cir. 2006)(quoting *United States v. Winingear*, 422 F.3d 1241, 1244 (11th Cir. 2005)).

***The applicable guidelines range***

In light of the nature and circumstances of the case, calculating the applicable guidelines range is somewhat straight forward. The charges to which Mr Marrero pled guilty under the terms and conditions of his written plea agreement with the government state that his scoring is governed by USSG § 2B1.1. *See* PSR ¶ 23. Then, because there were six separate drafts involved in the instant offense that added up to $214, 380, 137, the guidelines score will add an additional 28-level enhancement. *See* PSR ¶ 24. Subtracting three levels for Mr Marrero's acceptance of responsibility results in an adjusted score of 32.

Significantly, Mr Marrero would further suggest at least a two-level adjustment (if not more) for his minor/minimal participation in the offense, pursuant to USSG § 3B1.2. Probation is not recommending this adjustment over Defendant's objection.

---

[2] *See also United States v. Lorenzo*, 471 F.3d 1219, 1221 (11th Cir. 2006), in which the *Lorenzo* court summarized:

> Post-*Booker,* we review a district court's sentence for reasonableness. *United States v. Williams,* 435 F.3d 1350, 1353 (11th Cir.2006). In reviewing for reasonableness, we first determine if the district court correctly interpreted and applied the advisory sentencing guidelines. *Id.* We then determine whether the sentence is reasonable in light of the factors contained in 18 U.S.C. § 3553. *Id.* The district court must consider § 3553's factors in arriving at an appropriate sentence, but the district court need not recite that it has considered each factor. *Id.* A sentence that is based entirely upon an impermissible factor is unreasonable because such a sentence does not achieve the purposes of § 3553(a). *United States v. Williams,* 456 F.3d 1353, 1361 (11th Cir.2006).

So, probation would have Mr Marrero's score as a total offense level 32, Criminal History Category III, and a recommended range between 151 - 188 months (or 12 years, 7 months to 15 years, 8 months).

Conversely, Mr Marrero would suggest that his score should be closer to total offense level 30, Criminal History Category III, and a range between 121 - 151 months (or 10 years, 1 month to 12 years, 7 months). This score does not take into account the additional motions for downward departure that should also apply in this case.

***The section 3553(a) factors***

"After *Booker*, the Sentencing Reform Act requires that a sentencing court impose a sentence sufficient, but not greater than necessary to achieve the purposes of retribution, deterrence, public safety, and rehabilitation." *United States v. Williams*, 472 F.3d 835, 843 (11th Cir. 2006)(Barkett, J., dissenting)(quotation omitted). A sentencing court shall now consider "all of the factors listed in § 3553(a). As is evident from the text of § 3553(a)(4), the guidelines are only *one* factor (and not even the first) that must be considered by a sentencing court. The central concern is that a sentencing court impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, deter criminal conduct, protect the public from further crimes, and provide the defendant with treatment." *Id*. (quotations omitted)(emphasis in original).

> As the Supreme Court said, the constitutionally required excision of § 3553(b)(1) makes the Guidelines effectively advisory. It requires a sentencing court to *consider* Guidelines ranges, but *it permits the court to tailor the sentence in light of other statutory concerns as well*. Sentencing courts may no longer consider the guidelines range as mandatory and are now required to consider and evaluate *all* of the factors listed in § 3553(a) when fashioning a sentence.

*Williams*, 472 F.3d at 843 (citations and quotations omitted)(emphasis in original).

18 U.S.C. § 3553(a) states, in pertinent part:

**§ 3553. Imposition of a sentence**

**(a) Factors to be considered in imposing a sentence –** The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

**(2)** the need for the sentence imposed –

**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

**(B)** to afford adequate deterrence to criminal conduct;

**(C)** to protect the public from further crimes of the defendant; and

**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

**(4)** the kinds of sentence and the sentencing range established for –

**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –

**(I)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

. . .

**(5)** any pertinent policy statement –

**(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code **. . .**

**(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced;

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

It is against this background and to all the surrounding circumstances, the context of Mr Marrero's case and the story of his life that he begs the Court for its compassion, understanding, and wisdom when imposing its judgment.

### *The nature and circumstances of the offense*

As Mr Marrero explained and as detailed in his written plea agreement, the thrust of Mr Marrero's culpability lies in his presenting six drafts to Bank of America at the direction of Angel Cruz.  The drafts were valued at more than $200 million; however, the bank eventually refused to honor the purported instruments and it did not lose any money.  This is the extent of Mr Marrero's involvement; to which, the over-arching fraud is re-told in Bank of America's civil suit against The United Cities Group in its action presently taking place in the Southern District of Florida, Case No.08-21917-CIV-Gold (S.D.Fla. July 8, 2008).  Indeed, the government provided Mr Marrero with more than 400 pages of discovery on CD that, for the most part, tracks Bank of America's case against TUC and Angel Cruz.

*A fortiori*, Mr Marrero explains in his motion for downward departure, filed on December 3, 2008, at Doc 30, that although the intended loss may be said to be more than $200 million dollars . . . the actual loss, however, is $0.  Mr Marrero's case is a lot like the case of *United States v Roen*, a case out of the Eastern District of Wisconsin from 2003.

In *United States v Roen*, 279 F.Supp.2d 986 (E.D.Wis. 2003), the defendant there was convicted of mail fraud.  The district court found that the intended loss for purposes of the Guidelines was approximately $1.2 million – "defendant . . . proceeded to write checks in the amount of $1.2 million on the account as payment for various high priced items.  None were honored, and defendant failed to obtain any goods through the use of these checks." *Roen*, 279 F.Supp.2d at 987.

The court went on to conclude, however, "that on the facts of this case a loss of over $1.2 million substantially overstated the seriousness of defendant's offense. . . . Although defendant's scheme was not so improbable as to defeat a finding of intent, it was such that the amount of loss bore little or no relation to economic reality." *Roen*, 279 F.Supp.2d at 992-993.

More importantly, "the discrepancy between the actual loss [in this case, which was about $19,000] and the intended loss – over $1.2 million – was extreme." *Id*. at 993. The district court reasoned that the gross disparity between the figures at play seriously affected the fairness of the defendant's sentencing. *See id.* (citing *United States v Stockheimer*, 157 F.3d 1082, 1092 (7th Cir. 1998)). Thus, the district court in *Roen* granted a nine level departure to account for the dramatic increase in the offense level based on intended loss. *Roen*, 279 F.Supp.2d at 993. *See also, e.g., United States v McBride*, 363 F.3d 360 (6th Cir. 2004)(in bad check and bankruptcy scam, remanded to district court to consider whether to depart under § 2B1.1 where intended loss of over $1 million substantially overstated actual loss of $800); *United States v Redemann*, 295 F.Supp.2d 887, 899 (E.D.Wis. 2003)(in bank fraud case where guidelines were 18-24 months for loss of 2.5 million, court departed downward two levels in part because loss significantly overstated seriousness of offense – a departure exists "when there is a gross disparity between the actual loss and the defendant's intended loss"); and *United States v Walters*, 87 F.3d 663 (5th Cir 1996)(in money laundering case, district court reasonably departed downward by six months where defendant did not personally benefit from the fraud; lack of benefit was not considered by the Guidelines so USSG § 5K2.0 authorized departure).

In the case at bar, it can more than easily be said that "[a]lthough Mr Marrero's [offense] was not so improbable as to defeat a finding of intent, it was such that the amount of loss bore little or no relation to economic reality. . . . [Indeed], the discrepancy between actual loss [which is $0] and the intended loss [more than $200 million] was extreme." *Roen*, 279 F.Supp.2d at 993. The scoring

of Mr Marrero's case under the guidelines is so overly exaggerated as to fundamentally impair and adversely impact his right to a fair sentencing. *Cf. United States v Stockheimer*, 157 F.3d 1082, 1091 (7th Cir 1998). "In *Stockheimer*, for example, the intended loss was determined to be $80 million, yet the defendants' take was perhaps $200,000. The court found that this evidence provided a 'persuasive basis for the district court to consider a downward departure on the basis of the variance between the intended loss and the realistic possibility of such a loss. An $80 million loss may seriously overstate the seriousness of [the] offense.'" *United States v Roen*, 279 F.Supp.2d 986, 991 (E.D.Wis. 2003)(quoting *United States v Stockheimer*, 157 F.3d 1082, 1091 (7th Cir 1998)).

Said differently, "[t]he *Stockheimer* court held that given the gross disparity between the figures in that case the district court's erroneous conclusion that it could not depart seriously affected the fairness of the defendant's sentencing. Refusal to depart in the present case would have similarly affected the fairness of the defendant's sentence." *Roen*, 279 F.Supp.2d at 992.

Here, the intended loss was more than $200 million. The actual take was $0. The case involves no more than six bogus drafts and an attempt to deposit them at the bank in Orlando. Under all the surrounding circumstances and in light of the cited authority, this Court would be more than justified, fair, and reasonable in granting a downward departure as well as a marked deviation below the proposed guidelines score. *See United States v McBride*, 362 F.3d 360, 375 (6th Cir 2004)("Where sentencing is based largely or solely on intended loss, a downward departure may be warranted under the 'economic reality' principle.")(citation omitted). Otherwise, "[r]efusal to depart in the present case [may] similarly affect[ ] the fairness of [Mr Marrero's] sentence." *Roen*, 279 F.Supp.2d at 992.

### *The history and character of the defendant*

Mr Marrero's history and characteristics are captured at PreSentence Report ¶¶ 45 through 63.

### *The need for the sentence imposed*

The need for the sentence imposed is determined by the seriousness of the offense, promotion of respect for the law, the need for a just punishment, general and individual deterrence, and the needs of the defendant. *See* 18 U.S.C. § 3553(a)(2). In this case, there has been a violation of the law. Accordingly, as a matter of general deterrence, the conduct involved should be punished in some fashion. To be sure, the federal criminal conviction admitted to by Mr Marrero carries great weight. In sum, the sentence imposed by this Court should, as mandated by law, "be sufficient, but not greater than necessary, to comply with the purposes" with the need for the sentence imposed, in light of all the surrounding circumstances. *Cf. United States v. Myers*, 353 F.Supp.2d 1026, 1031 (S.D. Iowa 2005).

### *The kinds of sentences available and the guideline range, unwarranted disparities, and restitution*

In this case, and in light of *Booker*, even accepting, *arguendo*, that probation's suggested scoring of this case is correct, the Court is still within its authority and discretion to impose a non-guidelines sentence.[3] Said differently, the advisory guidelines may be the starting point and initial

---

[3] The Supreme Court held in *United States v Booker* that the mandatory nature of the sentencing guidelines system violated the Sixth Amendment of the United States Constitution. *See United States v Booker*, 543 U.S. 220, 226-227 (2005). To remedy this, the Supreme Court modified the federal sentencing statute to make the sentencing guidelines truly guidelines; they are advisory, but not binding on the sentencing court. *See id.* at 245. Subsequent litigation has affirmed the authority of the sentencing court to sentence within the range of choice dictated by the facts and applicable law of the case before it. *See, e.g., Gall v United States*, No. 06-7949, 128 S.Ct. 586, 602 (2007)(upholding sentence outside the advisory guideline range as reasonable); *Kimbrough v United States*, No. 06-6330, 128 S.Ct. 558, 570 (2007)(noting that sentencing courts may vary from the advisory guidelines range based solely on policy considerations, including disagreement with the

benchmark in determining a sentence. *See Gall v United States*, No. 06-7949, 128 S.Ct. 586, 596 (stating that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range"). While sentencing courts must "give respectful consideration to the Guidelines," they are permitted "'to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough v United States*, No. 06-6330, 128 S.Ct. 558, 570 (quoting *Booker*, 543 U.S. at 245-246). "[T]he Guidelines are not the only consideration, [and] the district judge should consider all of the § 3553(s) factors" to fashion the appropriate sentence. *Gall*, 128 S.Ct. at 596.

Moreover, Mr Marrero would also note that the Court is allowed to downward depart *sua sponte*. *See United States v. Spiegelman*, 4 F.Supp.2d 275, 285 (S.D.N.Y. 1985)("it is well settled that district courts may depart from the Sentencing Guidelines *sua sponte*"). After reviewing and studying the record and information before it, the Court may, despite the absence of such a request from a defendant, downwardly depart *sua sponte*. *See United States v. Ekhator*, 17 F.3d 53, 55 (2nd Cir. 1994)(stating that "the court has the authority to grant a departure on this ground *sua sponte*, even though the defendant may have entered into a plea agreement in which she agreed not to move for a downward departure").

Should the Court identify a point or issue it deems worthy of consideration for a downward departure in addition to those grounds already identified and presently before the Court, Mr Marrero would ask for the opportunity to brief the question for the benefit of the Court.

---

policy underlying the guidelines in a case); *Rita v United States*, No. 06-5754, 127 S.Ct. 2456, 2465 (2007)(stating that a district court may consider arguments that "the Guidelines sentence itself fails to properly reflect [18 U.S.C.] § 3553(a) considerations"). The result of this development in sentencing law is that sentencing courts must "take account of" the advisory guideline range as part of all the sentencing goals and factors enumerated in 18 U.S.C. § 3553(a), but are no longer bound by the sentencing range indicated by the applicable guideline in the case. *See Cunningham v California*, 549 U.S. 270, __, 127 S.Ct. 856, 867 (2007); *Booker*, 543 U.S. at 261.

As to the factors contained in § 3553(a)(6)[4] and (7)[5]: Any disparity between the sentence imposed in this case and sentences imposed in similar cases can be explained by the facts of this particular case. Mr Marrero is certainly willing to pay restitution if so ordered; however, probation declares that because no money was lost and Bank of America in particular is not out-of-pocket anything, "[r]estitution is not applicable in this case." PSR ¶ 83. Probation states that Mr Marrero does not have the ability to pay a fine. *See* PSR ¶ 63 ("Based upon the defendant's financial profile, the defendant does not presently possess the ability to pay a fine.").

***Revocation of supervised release***

Recognizing that the instant case violated his terms and condition of supervised release in Case No 8:94-CR-65-T-35DAB, Mr Marrero would humbly ask and request that any term of imprisonment the Court may be inclined to impose on revocation should run *concurrently* with any sentence he receive in the case at bar.

---

[4] Section 3553(a)(6) speaks to "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

[5] Section 3353(a)(7) addresses "the need to provide restitution to any victims of the offense."

## CONCLUSION

Based on all the surrounding circumstances of this case, Mr Marrero would ask and pray for this Court's compassion, empathy, and understanding. As Clarence Darrow declared: "I could see but one way toward any general betterment of social organization, and that was by teaching sympathy and tolerance." Clarence Darrow, THE STORY OF MY LIFE 54 (Da Capo Press 1996). As such, though recognizing he committed a crime, Mr Marrero would ask for a punishment sufficient, but no more greater than necessary, to achieve the goals of federal sentencing – perhaps said differently, a fair, just, and reasonable sentence.

**Respectfully submitted by:**                   **DONNA LEE ELM**
                                                 **FEDERAL PUBLIC DEFENDER**

                                                 §  *Stephen J. Langs*
                                                 Stephen J. Langs
                                                 Assistant Federal Public Defender
                                                 Florida Bar No. 0137227
                                                 201 South Orange Avenue
                                                 Suite 300
                                                 Orlando, Florida 32801
                                                 (407) 648-6338
                                                 (407) 648-6095 (fax)
Dated December 23, 2008                          stephen_langs@fd.org

*Certificate of Service*

     **I HEREBY CERTIFY** that a true and correct copy of the foregoing sentencing memorandum was electronically filed with the Clerk of Court, Middle District of Florida, using the Court's CM/ECF system on this the 23rd day of December, 2008, and as such, the Clerk will provide electronic notice to the attention of Assistant United States Attorney Carlos Perez. Also, undersigned furnished a copy of the foregoing by courier delivery to United States Probation Officer Angela Harris Butler on December 23, 2008.

                                        **DONNA LEE ELM**
                                        **FEDERAL PUBLIC DEFENDER**

                                        § */Stephen J. Langs/*
                                        Stephen J. Langs
                                        Assistant Federal Public Defender
                                        Florida Bar No. 0137227